**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| OCELTIP AVIATION 1 PTY LTD ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | CASE NO. 4:16-cv-00177 |
| ) | |
| GULFSTREAM AEROSPACE ) | |
| CORPORATION ) | |
| ) | |
| DEFENDANT ) | |

**OCELTIP'S MOTION TO REMAND TO SUPERIOR COURT
OCELTIP'S APPLICATION TO VACATE FINAL ARBITRATION AWARD**

Plaintiff Oceltip Aviation 1 Pty Ltd ("Oceltip") hereby moves this Court to remand to the Superior Court for Chatham County Georgia, Oceltip's Application to Vacate Final Arbitration Award ("Application to Vacate").

## I.   INTRODUCTION

In a flurry of costly and wrongheaded defensive procedural maneuvers, Defendant Gulfstream Aerospace Corporation ("Gulfstream") has unnecessarily burdened this Court, the Superior Court for Chatham County Georgia, and Oceltip by attempting to hijack Oceltip's contractual and statutory obligation and right to seek *vacatur* of the subject arbitration award under the Georgia Arbitration Code (Ga. Code Ann. §§ 9-9-1 *et seq.*; "GAC") and in state court. The parties expressly agreed (G550 Sales Agreement ("Agreement") § 4.3.3) and the arbitral tribunal ("Tribunal") held (Award 3, 32) that the Agreement and arbitration are governed under the laws of the State of Georgia, which includes the GAC. Actions brought under the GAC "shall be" filed and prosecuted in Georgia superior court. GAC §§ 4(a)(1), 12 and 13.

Accordingly, as agreed and as obligated under the GAC and the Award, Oceltip timely filed its *Application to Vacate Final Arbitration Award* in the Superior Court for Chatham County Georgia, seeking *vacatur* on the basis of the statutorily prescribed ground of *manifest disregard of the law*. GAC § 13(b)(5). In accordance with the parties' express choice of law, Oceltip's application is based <u>solely</u> on Georgia law.

In an attempt to escape its selection of Georgia law – in particular, *manifest disregard of the law* – and Georgia state courts, Gulfstream improvidently has removed Oceltip's Application to Vacate to this Court, citing the Federal Arbitration Act (9 U.S.C. 1 *et seq.*; "FAA") as the basis of federal question jurisdiction, removal jurisdiction, and as a limiter on Oceltip's grounds for *vacatur*.

Remand of Oceltip's Application to Vacate is proper based on any one of the following:

1. By agreement and pursuant to the Award, the GAC governs the Agreement and the arbitration. Under the GAC, Georgia superior courts have exclusive jurisdiction to vacate arbitration awards originally filed therein. GAC § 4.1(a)(1). The GAC does not provide for removal. Remand to state court is proper where the parties have agreed to its exclusive jurisdiction.

2. Gulfstream waived the right of removal.

3. <u>Industrial Risk Insurers</u>, <u>infra</u>, is inapposite.

4. On any of a number of independent bases, or in the aggregate, this Court should abstain from addressing Oceltip's Application to Vacate.

## II.  PROCEDURAL BACKGROUND

1. A final arbitration award ("Award") was issued by the Tribunal on March 15, 2016, in *Oceltip Aviation 1 Pty Ltd v. Gulfstream Aerospace Corporation*, ICDR Case No. 01-14-0001-3711.

2. Although under GAC § 13(a) Oceltip had until June 14, 2016, to apply to vacate the Award, on May 31, 2016, Gulfstream elected unnecessarily to burden this Court and Defendant by filing in this Court an *Application to Confirm Final Arbitration Award* asserting diversity jurisdiction under 28 U.S.C. 1332 (the "Application to Confirm") and citing grounds for confirmation based on Federal law (FAA § 9). In its Application to Confirm, Gulfstream expressly took notice that Oceltip had not taken action to vacate the Award, but did not take the time prior to filing its Application to Confirm to contact Oceltip or counsel to determine whether Oceltip intended to commence an action for *vacatur*.

3. On June 14, 2016, as required under GAC § 4(a)(1), Oceltip timely and properly filed in the Superior Court for Chatham County Georgia ("Superior Court") its Application to Vacate on the grounds that the Tribunal *manifestly disregarded the law* as expressly provided under GAC § 13(b)(5).

4. Also on June 14, 2016, Oceltip filed with this Court a motion to stay Gulfstream's Application to Confirm ("Motion to Stay"), and included a copy of the filed-stamped Application to Vacate filed by Oceltip in Superior Court. In its Motion to Stay, Oceltip pointed out that under the *forum-defendant rule*, 28 U.S.C. 1441(b)(2), Gulfstream would not be permitted to remove Oceltip's Application to Vacate. As Oceltip's Application to Vacate is based solely on state law, under the well-pleaded complaint rule this Court lacks subject matter jurisdiction for purposes of removal.

5. Stuck with no unobjectionable grounds to remove Oceltip's Application to Vacate, Gulfstream had at the same time an attack of amnesia and an epiphany. Forgetting its agreement and the Tribunal's holding that the Agreement and arbitration are governed under Georgia law, and resorting now to newly-discovered, different arguments under the FAA in an effort to create Federal question subject matter jurisdiction and removal jurisdiction, on June 29, 2016, Gulfstream filed with this Court:

   a. A motion to amend its Application to Confirm citing, alternatively, FAA §§ 9 and 207 (the "Amended Application to Confirm"), and

   b. A motion to remove Oceltip's Application to Vacate from Superior Court.

6. Also on June 29, 2016, Gulfstream filed with the Superior Court a response to Oceltip's Application to Vacate.

7. On June 30, 2016, Gulfstream filed with this Court:

   a. A motion to consolidate Gulfstream's Amended Application to Confirm and Oceltip's Application to Vacate and for Rule 16 Pretrial Conference ("Motion for Consolidation"), and

   b. A response to Oceltip's Application to Vacate.

8. On July 13, 2016, Oceltip filed with this Court a reply to Gulfstream's response to Oceltip's Application to Vacate.

9. On July 14, 2016, Oceltip filed with this Court:

   a. A reply to Gulfstream's response to Oceltip's Motion to Stay, and

   b. A response to Gulfstream's Motion for Consolidation.

10. On July 28, 2016, Gulfstream filed with this Court a reply to Oceltip's response to Gulfstream's Motion for Consolidation.

## III. ARGUMENT

### A. Gulfstream Fails to Carry the Very High Burden for Removal.

Federal courts are courts of limited jurisdiction and are required to inquire into their jurisdiction at the earliest possible point in the proceeding. Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1279-80 (11th Cir. 2001). Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts. Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).

"Where removal is challenged, the removing party has the burden to show removal is proper, or the case must be remanded to the state court." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir.2001). "[U]ncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994). The district court must evaluate all factual issues and questions of controlling substantive law in favor of the plaintiff. Coker v. Amoco Oil Co., 709 F.2d 1443, 1440 (11th Cir.1983).

In the event the Agreement is ambiguous regarding the parties' intent concerning applicable law or forum selection, Gulfstream, the drafter, cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62, 115 S. Ct. 1212, 1219, 131 L. Ed. 2d 76 (1995).

It is the well-settled public policy of the United States "that courts must 'rigorously enforce' arbitration agreements according to their terms. Am. Exp. Co. v. Italian Colors

Rest., 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013); a*ccord* Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1349 (11th Cir. 2014), cert. denied, 135 S. Ct. 1735, 191 L. Ed. 2d 701 (2015). It is also well settled that "There is no federal policy favoring arbitration under a certain set of procedural rules." Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 469, 109 S. Ct. 1248, 1250, 103 L. Ed. 2d 488 (1989).

As discussed below, far from uncertain, there is no question that this Court lacks removal jurisdiction over Oceltip's Application to Vacate or in any event that remand is proper.

**B. By Agreement, Georgia Superior Courts have Exclusive Jurisdiction.**

The GAC applies to matters where, as here, the Agreement includes a Georgia choice of law provision. Under GAC § 4(a)(1) and (b)(1), the superior court for the county where the arbitration took place (in this case, Chatham County, Georgia) has exclusive jurisdiction to hear *vacatur* actions under the GAC that are originally filed in superior court.

Ignoring its agreement that Georgia superior courts have exclusive jurisdiction to hear actions to confirm and vacate arbitration awards, Gulfstream has filed an application in this Court to confirm the Award and, doubling down on its error, has moved to remove from Georgia superior court Oceltip's Application to Vacate. As the subject agreement and arbitration are governed under Georgia law (Award 3, 32; Agreement § 4.3.1), the GAC controls.

Under GAC § 4(a)(1), any application to confirm or vacate an arbitration award "shall be" made to the superior court of the county where venue lies. Venue lies "(1) In the county where the agreement provides for the arbitration hearing to be held; or (2) If the hearing has already been held, in the county where it was held; or (3) In the county where

any party resides or does business...." GAC § 4(b). Georgia superior courts have exclusive jurisdiction and Chatham County is proper venue.

In the seminal case of Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 477, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (1989), the contract at issue specified that the contract would be governed by "the law of the place where the Project is located," which was California. Applying this choice of law provision, the California Court of Appeal held that (1) by specifying that the contract would be governed by "the law of the place where the Project is located," the choice-of-law clause incorporated the California rules of arbitration into the parties' arbitration agreement, and (2) application of California arbitration rules was not preempted by the FAA even though the contract involved interstate commerce. 489 U.S. at 468, 109 S. Ct. 1250.

In affirming the state court, the Supreme Court of the United States held that the FAA does not prevent:

> the enforcement of agreements to arbitrate under different rules than those set forth in the [FAA] itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate...so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is [different from that which would obtain under the FAA]. By permitting the courts to rigorously enforce such agreements according to their terms...we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.

489 U.S. at 479, 109 S. Ct. 1255-56. (internal quotations and citations omitted).

Bringing forward the breadth of its choice-of-law holding 25 years earlier in Volt, the Supreme Court recently reiterated that parties may have the arbitration provisions in their contract governed by the law of Tibet, the law of pre-revolutionary Russia or even a

state law that the Supreme Court subsequently invalidated. DIRECTV, Inc. v. Imburgia, 136 S. Ct. 463, 468, 193 L. Ed. 2d 365 (2015). For all purposes involving the FAA (all chapters), the Supreme Court's singular focus is identifying and applying the intent of the parties.

Following Volt, the Court of Appeals of Georgia applies the GAC rather than the FAA where the contract contains a Georgia choice-of-law clause and even though the transaction involves interstate commerce. Southwire Co. v. Am. Arbitration Ass'n, 248 Ga. App. 226, 227, 545 S.E.2d 681, 683 (Ga. App. 2001). The Southwire Court of Appeals stated:

> Under [Volt]...Southwire correctly argues that even though the transaction in this case involves interstate commerce, Georgia law applies by operation of a choice of law clause in the parties' contract stating that the laws of the State of Georgia shall govern "the validity, interpretation, and enforcement of" the contract.

Southwire, supra, 248 Ga. App. at 227, 545 S.E.2d 683.

Where a contract contains a Georgia choice of law clause, the FAA does not apply unless, at a minimum, the parties expressly make reference to it. Autonation Fin. Servs. Corp. v. Arain, 264 Ga. App. 755, 756, 592 S.E.2d 96, 98 (2003) ("Although the installment contract also states that it "will be governed by the laws of the State of Georgia" the language of the arbitration clause makes clear the parties' intention that it is governed by the FAA.")  State courts are the ultimate authority on state law. DIRECTV, supra, 136 S. Ct. at 468, 193 L. Ed. 2d 365 (2015). As the Agreement does not reference any law but that of the State of Georgia, which the Agreement expressly states controls, the clear intent of the parties is to apply the GAC and not the FAA. To the extent it is ambiguous, the ambiguity must be construed against the drafter, Gulfstream.

Accordingly, under the GAC, and as Gulfstream has agreed, the Superior Court for Chatham County Georgia has exclusive jurisdiction to hear Oceltip's Application to Vacate (and for that matter, Gulfstream's Application to Confirm). In order to give effect to the parties' intent, Oceltip's Application to Vacate should be remanded to the Superior Court.

### C. Gulfstream has Waived any Right of Removal

By agreeing that the GAC controls, the parties selected Georgia superior courts as the exclusive venue to hear applications to vacate arbitration awards. GAC § 4.1(a) states in pertinent part: "Any application to the court...<u>shall be made</u> to the superior court of the county where venue lies." GAC § 13(a) states in pertinent part: "(a) An application to vacate an award shall be made <u>to the court</u>..." GAC § 13(b) states in pertinent part: "The award shall be vacated <u>if the court finds</u> that the rights of that party were prejudiced by...(5) The arbitrator's manifest disregard of the law." The application to vacate must be filed with and ruled on by the superior court, and *manifest disregard of the law* is a valid ground for *vacatur*.

Georgia is (to the best of our knowledge) the only state statutorily providing *manifest disregard of the law* as a ground for *vacatur*. The Georgia General Assembly added § 13(b)(5) in direct response to the Georgia Supreme Court's decision in <u>Progressive Data Sys., Inc. v. Jefferson Randolph Corp</u>., 275 Ga. 420, 568 S.E.2d 474 (2002), where the court held that judicially-created grounds for vacatur (*e.g.*, manifest disregard of the law) were invalidated by omission in GAC § 13(b)(1)-(4). In quickly (2003) adding subparagraph (5), the General Assembly expressed a strong public policy in favor of enlarging due process in the review of arbitration awards. Given Georgia's unique grant of due process in GAC § 13(b)(5), which is in derogation of any limitations thereon which could be interpreted to exist under the FAA, unless this Court would apply

GAC § 13(b)(5) to Oceltip's Application to Vacate, the choice of law provision in the Agreement must operate as an exclusive forum selection provision in favor of Georgia superior courts.

Comprehensively rejecting Gulfstream's assertion in its Motion for Consolidation (and reply brief there regarding) that the FAA gives Gulfstream an "absolute right" to removal, the Supreme Court held that the FAA confers only an absolute right that "arbitration proceed in the manner provided for in [the parties'] agreement." Volt supra, 489 U.S. at 468, 109 S. Ct. 1250.

Accordingly, the right of removal is waived and remand is proper.

### D. Gulfstream's Belated Resort to *Industrial Risk Insurers* is Misplaced

Admitting in its Motion for Consolidation reply brief that under Volt and Southwire, supra, Chapter 1 of the FAA does not preempt the GAC, Gulfstream now takes the position that newly-discovered Chapter 2 of the FAA applies and, apparently because parties of different countries are involved, Chapter 2 is imbued with some omnipotence that overrides decades of Supreme Court authority regarding the FAA's limitations, preemptive and otherwise. According to Gulfstream, contrary to the Supreme Court in DIRECTV, supra, parties of different countries *may not* agree to be bound by "the law of Tibet, the law of pre-revolutionary Russia, or…[invalidated state law.]"

For this novel and unsupportable position, Gulfstream curiously relies on Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434 (11th Cir. 1998), which expressly acknowledged both that FAA Chapters 1 and 2 are on equal footing and the primacy of Volt's singular focus on identifying and enforcing the parties' intent regarding the rules applicable to arbitration:

> Chapter 2 of the FAA, like Chapter 1, "does not require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the §ope of their arbitration agreement." <u>Volt Info. §iences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (citations omitted). "<u>It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms</u>." Id.

<u>Ibid</u>, 141 F.3d at 1450. (Emphasis added)

Whatever else the 11th Circuit said in this case, it did not and may not be read to reverse the Supreme Court of the United States. The Court does not, as it may not, state that the FAA (any chapter) preempts state arbitration law. Any doubt regarding the Circuit's deference to <u>Volt</u> in international arbitration is dispelled by the Court's recent holding in <u>Lindo v. NCL (Bahamas), Ltd</u>., 652 F.3d 1257, 1275 (11th Cir. 2011): "[U]nder the Convention and Supreme Court and Circuit precedent, there is a strong presumption in favor of freely-negotiated contractual choice-of-law and forum-selection provisions, and this presumption applies with special force in the field of international commerce."

### E. Whether or not the FAA Applies, this Court Should Suspend Consideration of Oceltip's Application to Vacate and Remand it to Superior Court.

This Court's exercise of discretion to abstain and remand is proper for any of a number of compelling reasons or, in the aggregate, all of them.

1.  <u>Defensive Tactical Maneuver</u>. Gulfstream's improvident filings in this Court (Cases 4:16-cv-00127 and 4:16-cv-00177) are obviously a carefully orchestrated defensive maneuver calculated to avoid state law and state court. Although it had until March 14, 2017, to apply for confirmation of the Award, already having in hand $7 million of the $8 million liquidated damages amount and having argued in filings with the Tribunal that Oceltip is broke, Gulfstream was under no legal or financial pressure to rush to seek

confirmation of the Award, particularly when time was nearly up for Oceltip to seek vacatur. As of May 31, 2016, when Gulfstream launched its defensive maneuver by filing its Application to Confirm (Case 4:16-cv-00127), it knew that within two weeks one of the following would occur: (i) the 3-month deadline for Oceltip's application to vacate would pass, in which case Gulfstream's application to confirm, if any, would be granted without objection, or (ii) Oceltip would move to vacate in state court. Under (ii), if removal would be proper, Gulfstream would have 30 days to serve notice thereof.

Gulfstream's gambit is driven by its justified fear that the Tribunal manifestly disregarded the law and *vacatur* is proper, its assumption that a federal court would not apply GAC § 13(b)(5) (setting forth *manifest disregard of the law* as a ground for *vacatur*), and that by forum shopping and a race to the courthouse (which has failed, as discussed in division D(2) immediately below) Gulfstream can avoid the Georgia General Assembly's exceptional and express grant of due process with the additi0n of GAC § 13(b)(5). *See* Moses H. Cone Mem. Hospital v. Mercury Construction, 460 US 1, 18 n. 20, 103 S.Ct. 927, 938 n. 20 (1983)(noting that the federal court action had been filed as a tactical defensive maneuver).

     2.    Order of Courts' Assumption of Jurisdiction. This Court does not have jurisdiction over Gulfstream's Amended Application to Confirm. If the FAA rules regarding judicial review are applicable (under the Agreement and the GAC they are not), Gulfstream has failed to comply with FAA §§ 13(a) and 207, and has not bestowed on this Court (or the U. S. Magistrate) jurisdiction under the FAA. FAA § 13(a) provides: "The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk: (a) The agreement...and each written extension of the time, if any,

within which to make the award." Gulfstream has not filed the arbitration agreement that is the subject of the Award (*i.e.*, the Gulfstream G550 Sales Agreement), and Gulfstream has not filed the written extension of time given by the parties to make the award.

Article IV of the Convention, which FAA § 201 incorporates by reference, provides: "1. To obtain the recognition and enforcement [of an arbitration award], the party applying for recognition and enforcement shall, at the time of the application, supply: (a) The duly authenticated original award or a duly certified copy thereof; (b) The original [arbitration agreement] or a duly certified copy thereof." Even if FAA Chapter 2 is applicable regarding judicial review (under the Agreement and the GAC it is not), Gulfstream has not complied with Article IV(1)(b) of the Convention, having failed to file with this Court the arbitration agreement that is the subject of the dispute. Accordingly, this Court has no jurisdiction under the FAA.

Gulfstream has yet to file a notice of personal service over Oceltip for purposes of the Application to Confirm. The Superior Court assumed jurisdiction over Oceltip's Application to Vacate immediately upon filing on June 14, 2016. Gulfstream was personally served on that day. Accordingly, Gulfstream has no grounds to argue that its Application to Confirm was first in time relative to Oceltip's Application to Vacate filed in Superior Court.

3.   <u>The State Court Will Adequately Protect the Parties' Rights</u>.   Although Gulfstream has abandoned its claim of diversity jurisdiction (28 U.S.C. 1332(a)), the rationale for the *forum-defendant rule* (28 U.S.C. 1441(b)(2)) remains worthy of this Court's attention in considering whether to abstain. Gulfstream, a Georgia corporation with its principal place of business in Savannah, cannot be heard to argue that it would be treated unfairly by a state court in Savannah. Moreover, the GAC is as comprehensive

as is the FAA. Federal courts may dismiss or stay a declaratory action if the state suit will "satisfactorily resolve the controversy between the parties." Stephens v. Cobb Cty., Ga., 684 F. Supp. 703, 705 (N.D. Ga. 1988).

  4. <u>Federal Law Does Not Provide the Rule of Decision</u>. Under Volt and DIRECTV, supra, the GAC and not the FAA governs the parties' rights regarding judicial review of the Award.

  5. <u>Inconvenience for this Court</u>. The inconvenience for this Court is obvious, and further straining of Federal judicial resources is unnecessary where, as here, the GAC places responsibility for *vacatur* actions in superior court. GAC § 4(a)(1).

  6. <u>Oceltip's Application to Vacate is Likely to Succeed</u>. Gulfstream's unnecessary defensive filings in this Court reflect its justifiable distress caused by the merits of each of the several *manifest disregard of the law* charges raised in Oceltip's Application to Vacate.

  7. <u>Prosecution of Oceltip's Application to Vacate is Likely to Proceed More Quickly in Superior Court than in Federal Court</u>.

Gulfstream mistakenly contends that if FAA Chapter 2 applies, it can avoid defending *manifest disregard of law* charges in Oceltip's Application to Vacate. Oceltip will strongly contest this misconception. FAA Chapter 2 does not provide rules for how awards are vacated, only for how they are confirmed. There is no statutory basis under FAA Chapter 2 on which a party may file or seek to vacate an award and accordingly Chapter 2 does not limit the grounds therefor. "[The] New York Convention contains no provision for seeking to vacate an award, although it contemplates the possibility of the award's being set aside in a proceeding under local law, Art. V(1)(e). Lander Co. v. MMP Investments, Inc., 107 F.3d 476, 478 (7th Cir. 1997).

On the other hand, given that there is no mention of the FAA in the Agreement, there is no question that Georgia state courts will apply the GAC, which under § 13(b)(5) expressly includes *manifest disregard of the law* as a ground to vacate an arbitration award. *See, e.g.,* SCSJ Enterprises, Inc. v. Hansen & Hansen Enterprises, Inc., 319 Ga.App. 210, 215, 734 S.E.2d 214, 219-220 (Ga. Ct. App., 2012); Savannah Dodge, Inc. v. Bynes, 291 Ga. App. 281, 282, 661 S.E.2d 660, 661 (Ga. Ct. App. 2008).

8.  The FAA Expressly Allows for Abstention, Suspension and Remand. Under Article VI of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), if applicable, this Court may adjourn consideration of this Award because Oceltip made application to set aside the Award. In harmony, FAA § 12 provides: "For the purposes of the motion (to vacate) any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award."

9.  Ambiguity Calls for Remand. Under the *forum-defendant rule* and the *well-pleaded complaint rule*, this Court would lack subject matter jurisdiction generally and for purposes of removal of Oceltip's Application to Vacate. If there is any doubt whether the FAA preempts relevant state arbitration law (under Volt, DIRECTV and Southwire, supra, there is none), "[U]ncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994).

## IV.   CONCLUSION

For the foregoing reasons, Oceltip respectfully requests that this Court remand its Application to Vacate to the Superior Court for Chatham County Georgia.

Respectfully submitted this 30th day of July 2016.

BOWEN PAINTER LLC


<u>/S/ W. Andrew Bowen</u>
W. Andrew Bowen, Esq.
Attorney for Defendant
Georgia Bar Number:  071398
P.O. Box 8966
Savannah, GA 31412
912-335-1909 Phone
912-335-3537 Fax
andrew@bowenpainter.com


– and –


<u>/S/ Rex E. Reese</u>
Rex E. Reese (*pro hac vice* motion forthcoming)
Virginia Bar No. 27698
Attorney for Defendant
Rex E. Reese Esquire LLC
1350 Beverly Road, Suite 115
McLean, Virginia 22101
(703) 842-8000 Ph.
(703) 842-8484 Fax
rreese@jetviser.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| **OCELTIP AVIATION 1 PTY LTD** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| v. ) | **CASE NO. 4:16-cv-00177** |
| ) | |
| **GULFSTREAM AEROSPACE** ) | |
| **CORPORATION** ) | |
| ) | |
| **DEFENDANT** ) | |

**OCELTIP'S MOTION TO REMAND TO SUPERIOR COURT**
**OCELTIP'S APPLICATION TO VACATE FINAL ARBITRATION AWARD**

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 30th day of July 2016.

BOWEN PAINTER LLC

/S/ W. Andrew Bowen
W. Andrew Bowen, Esq.
Attorney for Defendant
Georgia Bar Number: 071398
P.O. Box 8966
Savannah, GA 31412
912-335-1909 Phone
912-335-3537 Fax
andrew@bowenpainter.com

– and –

/S/ Rex E. Reese

                Rex E. Reese (*pro hac vice* motion forthcoming)
                Virginia Bar No. 27698
                Attorney for Defendant
                Rex E. Reese Esquire LLC
                1350 Beverly Road, Suite 115
                McLean, Virginia 22101
                (703) 842-8000 Ph.
                (703) 842-8484 Fax
                rreese@jetviser.com